NATHAN A. CRANE (10165)
SCOTT YOUNG (10695)
SNOW, CHRISTENSEN & MARTINEAU
10 Exchange Place, 11th Floor
Salt Lake City, Utah 84111
Telephone: (801) 521-9000
Facsimile: (801) 363-0400
E-mail: nac@scmlaw.com
      sy@scmlaw.com

*Attorneys for Defendant Daniel Frischknecht*

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DANIEL FRISCHKNECHT,<br><br>Defendant. | **DANIEL FRISCHKNECHT'S POSITION OF PARTY WITH RESPECT TO SENTENCING FACTORS**<br><br>Case No. 1:17-cr-61<br><br>Judge Dale A. Kimball |

## I. INTRODUCTION

Daniel Frischknecht wrongfully took $565,591.41 from Zions Bank, where he was employed as a Branch Manager. On February 9, 2017, Daniel used a customer's line of credit to transfer $70,000 to his personal account. On May 8, 2017, Daniel used the same customer's line of credit to transfer $495,591.41 to his personal account. On May 9, 2017, Daniel used these funds to purchase a home.

Zions discovered the crime and confronted Daniel. Daniel admitted his error and immediately listed the home for sale to be able to use the proceeds to repay Zions. Instead of waiting until his home sold, Daniel obtained a high-interest loan from a hard money lender and another loan from his father to repay Zions full restitution plus an additional $33,922.02 to Zions' for their attorneys' fees, costs, and interest. Zions was repaid in full on August 17, 2017. The United States filed charges on September 19, 2017. Thus, Daniel repaid Zions' full restitution, interest and attorneys' fees prior to charges being filed.

Daniel acknowledges he erred and betrayed Zions' trust. He feels remorseful for the damage he caused Zions, the shame he has brought on himself, and the difficulties he has brought on his family. He has corrected his mistake and is working diligently to restore his reputation.

## II.   FACTORS TO BE CONSIDERED AND SENTENCING OPTIONS

"The ultimate command of § 3553(a) is, after considering all of the relevant factors, to impose a sentence that is sufficient but not greater than necessary to satisfy the purposes set forth in sub-section (a)(2)-just punishment, deterrence, protection of the public and rehabilitation of the defendant."[1] The advisory Guideline range, which gives the Court guidance, is just one of several sentencing factors for the Court to consider under 18 U.S.C.

---

[1] *United States v. Willis*, 479 F.Supp.2d 927, 929 (E.D. Wis. 2007).

[§ 3553(a)](#) in determining a fair sentence. The Guideline range in the PSR fails to adequately consider Daniel's conduct since the fraud terminated.

A sentencing Court must "treat the Guidelines as advisory" and "not presume that the Guidelines range is reasonable."[2] "It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue."[3] The Courts of Appeal review sentences for abuse of discretion and does not presume that the Guideline calculation is reasonable.[4]

The Court may consider the history and characteristics of this defendant, the need for the sentence imposed to reflect the seriousness of the offense, the types of sentences available, the need to afford adequate deterrence to criminal conduct, and the need to avoid unwarranted sentencing disparities between or among similarly situated individuals.[5]

Under [18 U.S.C. § 3553(a)](#), courts should sentence below the advisory Guideline range when such a sentence would be sufficient to achieve the purposes of punishment. Courts may vary from the Guidelines ranges based solely "on policy considerations,

---

[2] *[United States v. Collins, 684 F.3d 873, 888 (9th Cir. 2012)](#) citing [Gall, 552 U.S. at 51](#)*.
[3] *Pepper v. United States*, 131 S.Ct. 1229, 1240 (2011) internal citations omitted.
[4] *Gall v. United States*, 552 U.S. 38, 46 (2007).
[5] [18 U.S.C. § 3553(a)](#).

3

including disagreements with the Guidelines."[6] Based on a review of the all the factors, we believe Daniel should be sentenced to probation for 5 years.

### A. Acceptance of Responsibility

Daniel has accepted responsibility through word and action. He has acknowledged his error and the harm it has caused, and he has expressed great remorse for his bad behavior. He has said: "I used money without permission to acquire a home. I am sorry for this mistake I made and greatly regret my actions. I fully accept the responsibilities of my actions."[7] In addition to this remorse, Daniel is committed never to repeat these errors.[8]

More importantly, Daniel has made Zions whole. He completely repaid Zions, including its attorneys' fees, costs and interest. He did this within six months of the first withdrawal and before criminal charges were filed, at great expense to him and his family. Daniel cooperated with the government, knowing full well he was assisting in the government's investigation and prosecution of him. On February 14, 2018, he pleaded guilty to one count of Money Laundering.[9] These actions speak to his remorse and acceptance of responsibility.

---

[6] *See also* Rita v. United States, 551 U.S. 338, 351 (2007) (stating that a district court may consider arguments that the Guidelines sentence itself fails to properly reflect § 3553(a) considerations); *Kimbrough v. United States*, 552 U.S. 85, 101 (2007).
[7] PSR ¶ 12.
[8] *See* Letters of Support.
[9] See Doc. #14.

In addition to acknowledging his mistake and working to repay Zions, Daniel has found new employment. Daniel is working for Acclaimed Home Warranty, LLC ("AHW"), where he recruits and trains sales personnel. During the interview process, Daniel fully informed AHW about the criminal charges. Despite this, AHW hired Daniel. Daniel has been excelling at AHW where he is considered a model employee. Daniel is also working nights at FedEx in their package department, where he loads packages onto trucks for delivery in the morning. He is doing this to repay the loans he obtained to make Zions whole and to continue to provide for his wife and two children. Thus, Daniel has already established a pattern of honest work as he attempts to restore his reputation and support his family.

Daniel makes no excuses for what he did. He is committed to correcting his mistakes and living his life in a lawful manner. As shown in the PSR, the letters of support and Daniel's post-criminal efforts, he has been and is doing all he can to clean up the mess he created.

### B. Family

Daniel's background and family are important 3553(a) factors in determining the appropriate sentence. Daniel is one of four children. He grew up in a middle class family. His parents worked hard and instilled the value of hard work in him. He is very close with his parents, and is assisting his mother as she struggles to overcome stage 3 breast cancer.

Daniel graduated from Viewmont High School in 2003 and started with Zions as a Bank Teller in November of 2004. He worked hard and advanced to an Account Manager and later to an Online Banking Manager. In 2008, he was promoted to be the Branch Manager in South Ogden. Later, he became Branch Manager in North Salt Lake, and, finally, Bountiful, where he lives.

Daniel married Melanie Checketts in 2007. Melanie is a wonderful wife and mother; however, she suffers from depression and anxiety. Melanie has been treated for depression since she was in junior high. Her depression worsened after she became a mother, and she is currently being treated by Certified Family Nurse Practitioner Sandra Waite. Melanie is currently on medication for her anxiety and depression. Because of this, Daniel plays a significant role at home and in the lives of their two children, Lucas (5) and Claire (2). When Daniel's son Lucas was two, he fell off the kitchen counter and suffered severe nerve damage to his face. Because of this, he has a facial paralysis on the right side of his face, and he looks a little bit like he has had a stroke. The doctors do not expect the nerves in his face to ever heal. Daniel plays a key role in Lucas's recovery from this accident and his continued development.

Daniel typically works at AHW from 8 a.m.-5 p.m. Given his wife's condition, he cooks dinner most nights, bathes the children, and reads them stories before putting them to bed. Once they are in bed and asleep, he goes to his second job at FedEx. While prison

sentences are difficult on all families, a prison sentence for Daniel will be especially hard and impactful on his wife and children.

**C. Lifestyle**

Daniel and his family have made significant and meaningful changes in their life in order to obtain the money to repay Zions. Most individuals in Daniel's position would have either waited until they were ordered by a Court to make restitution payments or would have listed the home for sale and waited until it sold to obtain some money to pay to the victim. Daniel did neither. He immediately went to third parties to secure legitimate loans in order to pay Zions Bank in full. Zions has received more than what this Court likely would have ordered at a restitution hearing. Zions has received 100 cents on the dollar, plus interest on the money over the time that Zions did not have the money, plus attorney/investigative costs incurred by Zions. In short, Zions is completely whole. In most cases with large loss amounts the victims usually only receive token monthly payments for a couple of years until the individual is released from supervision. It is the extremely rare case where a victim is made completely whole.

Here, Daniel was able to secure two loans: one for $249,000 and one for $412,378. These loans have come at a heavy price. The larger loan was secured from a third party hard money lender. Pursuant to the terms of the promissory note Daniel signed, the lender has a first position lien on Daniel's home. Daniel, as agreed with the lender, has been

making high monthly interest-only payments. The lender will receive the return of his principal when the home is sold.

**D. Disparate Sentences**

A critical sentencing factor in this case is the need to avoid disparate sentences between or among similarly situated individuals.[10] The government's recommendation of a 24-month prison sentence does not align with the position it has taken in four recent cases. A review of these cases supports a sentence of probation.

### a. *USA v. Jeremy Sexton (#2:16CR586)*

The individual most similarly situated to Daniel is Jeremy Sexton, who pled guilty to one count of wire fraud and was sentenced to probation for five years in May 2017.[11] From 2009-2016 Mr. Sexton embezzled over $800,000 from his employer.[12] Like Daniel, Mr. Sexton was a manager who had access to his employer's money. However, unlike Daniel, Mr. Sexton has not fully repaid the amounts he took. Mr. Sexton repaid $189,344 before the sentencing hearing.[13] Three months ago, this Court issued a Notice of Garnishment to Mr. Sexton for $268,005.98 in an attempt to recover monies still owing to victims having discovered valuable assets Mr. Sexton had hidden from the Court.[14] By

---

[10] 18 U.S.C. § 3553(a)(6).
[11] Judgment, Doc. #19.
[12] Statement in Advance of Guilty Plea, Doc. #10, p. 3-5.
[13] Defendant's Sentencing Memo., Doc. #16, p. 10.
[14] Clerk's Notice of Garnishment, Doc. #34.

8

contrast, Daniel repaid the full amount of $565,591.41 (plus $33,922.02 for attorneys' fees, costs, and interest) before charges were filed. A comparison of the two cases is below:

|  | *Sexton* | *Frischknecht* |
|---|---|---|
| Victim of Fraud | Company | Company |
| Length of Fraud | Hundreds of Transactions over 96 months | 2 transactions over 4 months. |
| Reason for Fraud | "I felt entitled to the money because I made everyone a lot of money" | To purchase a home. |
| Amount of Restitution Outstanding | $268,005.98 (per Writ of Garnishment filed on December 29, 2017, Doc. #33) | $0 |
| Victim's costs, attorneys' fees, interest paid | $0 | $33,922.02 |
| How Funds for Restitution were Obtained | Sold house to his wife to generate $85,000 that went to victims | Obtained a high-interest loan from a third-party lender and a loan from his father. |
| Initial Reaction when Confronted by Employer | Denied wrongdoing and lied about his conduct. Told employer there were only a couple of fraudulent transactions that occurred over preceding four months. Investigation revealed hundreds of transactions that occurred each month over 8 years. | Admitted to two transactions. Additional investigation by Zions and the FBI has verified no additional fraudulent transfers. |
| Plea Agreement | PG Mail Fraud, 11(c)(1)(C) 0-12 months<br><br>43% reduction from guidelines | PG Money Laundering, government to recommend 33 months incarceration. |

|  |  | 0% reduction from guidelines. |
| --- | --- | --- |
| USSG Criminal History Category | I | I |
| USSG Offense Level | 2B1.1:<br>Base: 7<br>Loss Amount: 12<br>Acceptance: -3<br>Total: 16<br><br>(21-27 months) | 2S1.1 using 2B1.1<br>Base: 6<br>Loss Amount: 14<br>Position of Trust: 2<br>Money Laundering Enhancement: 1<br>Acceptance: -3<br>Total: 20<br><br>(33-41 months) |

It is unclear why the government is treating Daniel more severely than Mr. Sexton. Daniel and Mr. Sexton are similarly situated with the key difference being Daniel has paid restitution in full and did not hide assets from the government.

      **b.**     *USA v. Nghia Thi Sabol (#2:15CR697)*

This case provides another disparity in the government's treatment of similarly situated individuals. Ms. Sabol defrauded multiple investors while she was on parole for four counts of securities fraud in state court.[15] Despite her prior conviction, she convinced several people to invest in a company under false pretenses, clearly demonstrating she had not learned her lesson. Not only did she violate federal law, she violated the terms of her parole, which prohibited Ms. Sabol from being employed in a fiduciary position or dealing

---

[15] *See State of Utah v. Sabol*, Third Dist. Ct. Salt Lake County Case No. 031900392.

in investments.[16] After being caught, Ms. Sabol paid little restitution; yet, the United States agreed to an 11(c)(1)(C) joint recommendation to a 24-month sentence, 9 months less than what the government is seeking in this matter.[17] This Court sentenced Ms. Sabol to 24 months incarceration and ordered her to pay $943,250 in restitution.[18]

Daniel's case is markedly different. He took $377,659 less than the amount of restitution ordered in Ms. Sabol's case. Unlike Ms. Sabol, Daniel did not commit the instant offense while on parole. Unlike Ms. Sabol, Daniel has completely paid all restitution and did so before he was indicted. Unlike Ms. Sabol, Daniel has found work outside the financial industry. Despite all of this, the United States is recommending Daniel receive a greater sentence, 33 months, than Ms. Sabol. This amounts to disparate treatment.

        c.      *USA v. Ryan Davies (#1:16CR36)*

In this case, "[f]or three years, defendant lied to, cheated and stole from a business partner, franchisee owners, and investors." Doc. #44, p. 4. Specifically, Mr. Davies did the following:

- "Over the next three years, defendant strung S.G. along through an elaborate array of lies and deception focused on purportedly securing $1 billion funding from G.C., a philanthropist from the Midwest … [D]efendant flat out stole over $400,000 from S.B. to pay for personal and independent business expenses." (Doc. #44, p. 4-5).

---

[16] See Id., p. 4.
[17] See Id.
[18] See Id.

- "All told, defendant and Stevenson deceived five sets of EC franchise owners, with buy-ins ranging anywhere from $33,750 to $150,000." (*Id.*, p. 5)

- "Under the guise of an EC franchise, defendant also claimed victims K.K. ($27,000), K.C. ($60,000), R.T. ($30,000), J.T. ($48,000), and A.S. ($30,000)." (*Id.*, p. 7)

- "Defendant also pitched three franchisees to invest in short-term "bonds" with NASA, Subway, and the U.S. military. The investments ranged from $10,000 to $50,000, with promised returns of 17 or 20 percent. None of the bonds were real. In total, defendant stole $181,000 under this scheme for personal and independent business expenses." (*Id.*, p. 8)

Despite this, the United States acknowledged:

> [I]t is not insignificant that defendant has paid at least $150,000 on the front end of his sentence. As the Court is well aware, such efforts to pay significant restitution at this juncture in a criminal case is extremely rare and almost never occurs.

*Id.*, at 12. Based on this multi-faceted fraud scheme and $150,000 restitution, the United States recommended a 27-month sentence, 6 months less than it is recommending for Daniel. The Court sentenced Davies to a 24-month sentence with $1,264,660 restitution order.[19]

Here the total loss amount is less than half the loss amount ordered in *Davies*. Here the crime occurred over a period of two months and involved two transactions. In *Davies* the crime took place over three years. There were two fraudulent acts, not a series of schemes and lies. In *Davies*, the government argued Davies "left no silver lining for

---

[19] *See* Doc. #49, p. 6, Doc. #54, p. 6.

victims, only a trail of lost investments, broken families, and many sleepless nights wondering how they were taken in and crushed financially by this charming con man."[20] The government simply cannot make the same argument regarding Daniel. Yet, the government, inexplicably, is seeking a longer period of incarceration for Daniel.

### d. USA v. Benjamin Rees (#2:15-CR-712)

In this case, "[f]rom approximately 2009 until 2014, [Mr. Rees] embezzled approximately $800,000 from [his] employer W.E."[21] He did not pay taxes on these amounts and was charged with tax evasion. He pled guilty and was sentenced to 36 months probation.[22] Although their crimes were different, Mr. Rees's conduct was more troubling than Daniel's. Mr. Rees embezzled a larger amount over five years and had not paid any restitution to the victims when he was sentenced.[23] A harsher sentence for Mr. Frischknecht under such circumstances would be unequal and unfair.

The defendants in *Sexton*, *Sabol*, *Davies*, and *Rees* are similarly situated to Daniel. Without exception, the defendants in *Sexton*, *Sabol*, *Davies*, and *Rees* had larger loss amounts and the government asked for lower sentences than the instant case. Given the totality of the circumstances and the conduct of the similarly situated defendants, sentencing Daniel to more time than *Sexton*, *Sabol*, *Davies* or *Rees* would result in

---

[20] Doc. #44, p. 9.
[21] Statement in Advance of Guilty Plea, Doc. #6, p. 3.
[22] *See* Judgment, Doc. #14.
[23] See Doc. #14, p. 4.

unwarranted disparity. Daniel's case is most similar to *Sexton* and *Rees* who both were sentenced to probation.

### E.  Restitution

Another sentencing consideration is "the need to provide restitution to any victims of the offense."[24] Daniel paid full restitution, including attorneys' fees, costs, and interest, before the indictment was filed. He did this by obtaining a loan from his father and a high-interest loan from a third-party hard money lender. This is not a case of Daniel being bailed out – rather, he has taken steps, at great financial cost, to make things right. Thus, repayment has come at a significant cost to Daniel, as it should. In *Davies*, the United States acknowledged that repayment of $150,000 (of a $1.5 million fraud) was "extremely rare and almost never occurs."[25] Daniel's repayment of all the funds taken ($565,591.41) and Zions' attorneys' fees, expenses, and interest ($33,922.02) is virtually unheard of, and warrants a significantly reduced sentence.

### F. Sentencing Options

The Court has wide discretion to fashion a fair and just sentence when considering all circumstances. This Court can impose a period of probation.[26] The Court can also impose home confinement.[27]

---

[24] 18 U.S.C. § 3553(a)(7).
[25] Doc. #44, p. 12.
[26] [18 U.S.C. § 3561(c)(1)](18 U.S.C. § 3561(c)(1)).
[27] 18 U.S.C. § 3563(b)(19).

14

The goals of sentencing are to deter the defendant and others, provide the defendant with rehabilitation, and impose just punishment for the offense committed. In this unusual case the goals of deterrence, rehabilitation and punishment, arguably, have largely been achieved.

Daniel recognizes his error and betrayal of Zions' trust, and he and has taken significant measures to repay Zions' fully and restore his honor. The heartache and pain this has caused Daniel and his family, as well as the taint of a felony conviction, have been, and will continue to be, a significant deterrent to Daniel and others.

The likelihood of recidivism is remote at best. Daniel has actively sought to correct his wrongs. He has been a model pre-trial supervisee. He has ceased all work in the financial and investment fields. He is working two jobs to support his family and repay the loans he obtained to repay Zions. And he has significant support from his family and his new employer.

No matter what sentence the Court imposes, Daniel's greatest punishment is the knowledge of his betrayal of others and the loss of his good name and reputation as a result.

## V. CONCLUSION

An order of probation with special conditions is a sentence that reflects the seriousness of the offense, effectively serves as a deterrent, and achieves the goals and objectives of 18 U.S.C. § 3553(a). Daniel has no criminal history and no evidence suggests he is likely to re-offend. A sentence of probation would also take into account Daniel's

15

cooperation in his own prosecution, his unequivocal acceptance of responsibility, and his full repayment to Zions. To sentence Daniel to more than what is required for rehabilitation and to achieve just punishment makes little sense and would not be in keeping with the notion of "a sentence sufficient, but not greater than necessary.…"[28] For these reasons, Daniel requests he be sentenced to probation for five years.

DATED this 23rd day of May, 2018.

**SNOW, CHRISTENSEN & MARTINEAU**

By: /s/*Nathan A. Crane*
NATHAN A. CRANE
SCOTT YOUNG
*Attorneys for Defendant*

---

[28] 18 U.S.C. § 3553(a).

# CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of May, 2018, I caused a true and correct copy of the foregoing **DANIEL FRISCHKNECHT'S POSITION OF PARTY WITH RESPECT TO SENTENCING FACTORS** to be delivered electronically, via ECF filing through the court, to the following:

> Jacob Strain
> Ruth Hackford-Peer
> Assistant United States Attorneys
> United States Attorney's Office
> 111 South Main Street, Suite #1800
> Salt Lake City, UT  84111

                                                            */s/* Kathy Hulse

4831-3081-6351, v. 1