JOHN W. HUBER, United States Attorney (#7226)
RUTH HACKFORD-PEER, Assistant United States Attorney (#15049)
JACOB J. STRAIN, Assistant United States Attorney (#12680)
Attorneys for the United States of America
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: (801) 524-5682

---

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DANIEL SCOTT FRISCHKNECHT,<br><br>Defendant. | Case No. 1:17-cr-00061<br><br>SUPPLEMENTAL POSITION OF THE UNITED STATES REGARDING SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a)<br><br>Judge Kimball |

The United States of America, through the undersigned, hereby files this Supplemental Position on Sentencing Factors as to defendant Daniel Frischknecht in advance of the sentencing hearing currently scheduled for August 13, 2018.  The position of the United States has been revised based on additional facts regarding Mr. Frischknecht's history and characteristics as well as the nature and circumstances of his conduct discovered prior to sentencing.  This revision is made pursuant to paragraph 12(d) of the plea agreement.  *See* ECF Docket No. 14.

The United States and defense counsel have reached an agreement whereby all parties agree that the USSG § 3C1.1 obstruction enhancement (+2) should to be added to the guideline calculation; that this Court should consider Mr. Frischknecht's obstructive conduct at the

upcoming sentencing hearing; and that the United States will then dismiss the felony obstruction and identity theft charges in the case assigned to Judge Benson.  This procedure, will in effect, consolidate the cases for this Court, and save time and resources by eliminate the need for additional hearings and another sentencing hearing.  Thus, the United States asks the Court to consider all of Mr. Frischknecht's conduct in issuing the sentence including his theft of the Poulton's identities and his efforts to obstruct justice in this case.

Accordingly, the United States recommends the Court order:

- a term of incarceration at the **high-end** of the USSG; and

- restitution of **$565,591.41** (with notice to the clerk of the court that restitution has been satisfied in full);

## I.    FACTUAL BACKGROUND

On February 14, 2018, Mr. Frischknecht pleaded guilty to embezzling $565,591.41 from Zions Bank where he had been employed as the manager of the Bountiful branch for three years. Specifically, he pleaded to a one count Felony Information charging money laundering under 18 U.S.C. § 1957.  The parties agree that the amount of restitution to be ordered is $565,591.41 although restitution has been satisfied in full.

Mr. Frischknecht's sentencing was previously scheduled for May 30, 2018.  The United States anticipated recommending the low-end of the guidelines (33 months).  Defense counsel anticipated arguing that Mr. Frischknecht should receive a probation sentence.

On the day of sentencing, the undersigned and AUSA Ruth Hackford-Peer received a phone call from Stephanie Kilpatrick.  Ms. Kilpatrick explained that she is a Human Resource representative of Acclaimed Home Warranty—the place where Mr. Frischknecht had been working pending the resolution of the Zions Bank fraud case.  Ms. Kilpatrick explained that she

had reviewed the docket and that the letter in support purportedly written by Jeff and Steven Poulton was not written or signed by Jeff and Steve Poulton, but that Mr. Frischknecht had forged the letter (the "Poulton Letter").   As a result, Acclaimed Home Warranty had fired Daniel Frischknecht that very morning.   When Acclaimed Home Warranty confronted and fired Mr. Frischknecht with the forged letter, he stated simply that he did not file the letter with the Court.

At the May 30, 2018 sentencing hearing, defense counsel asked the Court to strike the letter and not consider it as part of sentencing.   Counsel further argued that the United States could not prove that Mr. Frischknecht forged the letter, only that the employer did not sign it; and therefore, the United States could not meet a preponderance standard in seeking any enhancements. Accordingly, the United States opened an investigation into Mr. Frischknecht's theft of the Poulton's identities and his obstruction of justice.

Through its investigation, the United States was able to establish that on May 22, 2018, Mr. Frischknecht used his Acclaimed Home Warranty email account to scan a copy of the signed letter and send it to an email account listed as dfrisch003@gmail.com.   The scanned letter discovered on Mr. Frischknecht's Acclaimed Home Warranty email matches the letter filed with the Court exactly.   After engaging in further litigation with Snow, Christensen, & Martineau before Judge Nuffer, the United States received the email Mr. Frischknecht sent to his counsel forwarding the forged letter from his dfrisch003@gmail.com account.   In the email to counsel, Mr. Frischknecht states:

> *Nathan and Scott,*
>
> *My boss gave this to me this morning.  I think Jeff [Poulton], will end up being there on Wednesday.*
>
> *Thanks!*

The Poulton letter goes into detail about what a great employee Mr. Frischknecht is, how much money he made the company, and how he is extremely honest and trustworthy. The letter also stated: "Dan was up front and honest about his legal situation when we interviewed him."

Jeff and Steve Poulton have both confirmed that they did not write or sign the letter and that much of the content of the letter is false or exaggerated. For example, Mr. Frischknecht did NOT disclose the fact that he had pending felony charges against him for embezzlement during the time of his interview. Nor did he disclose his termination from Zions Bank for embezzlement. This forged letter was clearly designed to convince the Court that Mr. Frischknecht's underlying fraud conviction is not representative of his current character and that he is making strides professionally.

Based on this new criminal conduct, Mr. Frischknecht was indicted on June 13, 2018 by a federal grand jury and was arrested. Mr. Frischknecht spent one night in jail before being released by Judge Warner with strict release conditions.

## II.      GUIDELINE CALCULATION BY THE UNITED STATES

Given the new fraudulent conduct of Mr. Frischknecht, the United States now calculates his guidelines as follows:

| Money Laundering, in violation of 18 U.S.C. § 1957 | | |
|---|---|---|
| §2B1.1(a)(1) | Base Offense Level | +6 |
| §2B1.1(b)(1)(H) | Loss amount +$550,000 | +14 |
| §2S1.1(b)(2)(A) | Convicted under 18 U.S.C. § 1957 | +1 |
| §3B1.3 | Position of Public or Private Trust | +2 |
| §3C1.1 | Obstructing or Impeding Justice | +2 |
| §3E1.1(a) | Acceptance of Responsibility | -2 |
| §3E1.1(b) | Additional Acceptance | -1 |
| | Total Offense Level | 22 |

Mr. Frischknecht has zero criminal history points, which puts him in criminal history category I. Mr. Frischknecht's guideline range is 41–51 months imprisonment. The United States

seeks a sentence at the high-end of the guideline range as calculated by the Court, with 3 years of supervised release to follow.

### III.      18 U.S.C. § 3553 FACTORS SUPPORTING A HIGH-END SENTENCE

The § 3553 factors the Court is to consider in imposing sentence, support the United States' recommendation a high-end guideline sentence:

*1.   Nature and circumstances of the offense*:

Because the United States has agreed to dismiss the obstruction and identity theft case before Judge Benson, this Court should fully consider all of Mr. Frischknecht's criminal activity that has taken place over the last 2 years and sentence him accordingly.

First, Mr. Frischknecht twice embezzled from Zions Bank in a big way.  He was able to steal hundreds of times more money than bank robbers can steal through threats or violence.  At the time of the embezzlement, Mr. Frischknecht had been employed as the manager of the Bountiful branch for three years.  Mr. Frischknecht's crime did not involve one single lapse of judgment, but involved two deliberate acts almost three months apart.  Mr. Frischknecht first embezzled $70,000 using a Zions Bank customer's line of credit.  Approximately three months later, he embezzled $495,591.41, depositing it in to his personal Mountain America Credit Union account and then wiring the money to a title company for the purchase of a new home in Bountiful, Utah.  Using his position of as manager, Mr. Frischknecht made efforts to conceal his theft.  His embezzlement was deliberate, careful, and systematic.  This was not a crime born out of desperation or a moment of weakness; rather, it was an ongoing endeavor.

Second, while the underlying embezzlement case was pending, Mr. Frischknecht sought to defraud this Court through obstruction and through the theft and use of the identities of his new employers.  After being fired from Zions, Mr. Frischknecht lied to get his job at Acclaimed Home

Warranty, he used his work computer and scanner to accomplish the identity theft, and used his attorneys to file the forgery with the Court in an effort to affect the outcome of the proceedings. When he was caught and directly confronted with the forgery, he lied to his employer and again later to his attorneys, causing additional investigation and litigation expense to the United States.

On top of all that, the Poultons provided information indicating that Mr. Frischknecht submitted a forged $6,000 receipt (which Acclaimed Home Warranty paid to him) and also "borrowed" approximately $10,000 so that his son could get some kind of medical surgery. The Poultons do not wish to participate in the restitution process and are seeking to put their involvement with Mr. Frischknecht behind them. The United States provides this information only to counter Mr. Frischknecht's lies submitted to the Court regarding his performance at Acclaimed Home Warranty. Mr. Frischknecht took advantage of his new employer while awaiting the resolution of his underlying fraud case against his previous employer.

2. *History and characteristics of the defendant*:

In his previously filed position on sentencing factors (ECF Docket No. 20), Mr. Frischknecht paints himself as a family man anxiously engaged in the welfare of his wife and children. It speaks of Mr. Frischknecht working long hours, cooking dinner, bathing his children, and reading bedtime stories. Mr. Frischknecht asks the Court to consider the impact a prison sentence will have on his wife and children.

First, if he were truly concerned with the welfare of his family, Mr. Frischknecht would not have embezzled over $560,000 from a bank. Second, it would be best for Mr. Frischknecht's children to learn that one must be held accountable for criminal conduct. Finally, and most importantly, the position of the U.S. Sentencing Commission is that "family ties and responsibilities are not ordinarily relevant in determining whether a departure may be warranted."

U.S.S.G. § 5H1.6.  Courts have read this to mean that where the defendant is not irreplaceable, departures based on family obligations should be rejected.  *See Elliott v. United States*, 332 F.3d 753 (4th Cir. 2003).  "Disruptions of the defendant's life, and the concomitant difficulties for those who depend on the defendant, are inherent in the punishment of incarceration."  *United States v. McClatchey*, 316 F.3d 1122, 1132 (10th Cir. 2003) (quoting *United States v. Sweeting*, 213 F.3d 95, 102 (3d Cir. 2000)).  Thus, courts have regularly rejected downward sentencing departures for such relatively common claims that defendants should be spared incarceration due to family responsibilities.

The reality is, Mr. Frischknecht is a thief and a liar, indulged by his aging parents who now bear the brunt of the financial ruin he has caused.  Many of Mr. Frischknecht's criminal counterparts who steal much less through bank robberies or store thefts commit such crimes because of drug addiction, desperate indigence, mental deficiencies, or traumatic childhoods.  Mr. Frischknecht does not face any of these inequities and is therefore more culpable than his counterparts.  He should therefore receive a sentence reflective of that amplified culpability.

3. *The need for the sentence (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence; (C) to protect the public from further crimes of the defendant; and (D) to provide defendant with appropriate vocational training, medical care, or other correctional treatment in the most effective manner*:

The recommended high-end guideline sentence reflects the seriousness of the offense, provides just punishment, promotes respect for the law, and affords adequate deterrence (both specific and general) while at the same time recognizing Mr. Frischknecht's guilty plea.  Part of a just punishment is to leave no doubt in the mind of the defendant, the victims, and third-party observers that the Court has fully considered the gravity of the criminal conduct, and reacted accordingly.

*Specific Deterrence*:  Based on the extensiveness of the fraud, his behavior while on release, his deceit involving his employment, his continued engagement in fraud, his theft of identities, and his efforts to obstruct justice, the United States submits that Mr. Frischknecht is at a *very high* recidivism risk.  Mr. Frischknecht engaged in brazen behavior even after he was facing significant punishment by this Court.  If the past is any predictor of the future, there is little doubt that he will engage in additional fraud.  Only a lengthy prison sentence will guarantee the economic safety of the community.

*General Deterrence*:  The need for general deterrence also justifies a high-end guideline sentence in this case.  Utahans have a lot to be proud of—a beautiful state, a high employment rate, a great heritage.  Unfortunately, Utah is also known on a national level as a hotbed of rampant fraud and white-collar crime.  The FBI has recently ranked Utah as one of the top five states for white-collar fraud in America.  *See* Ben Winslow, *Feds, Utah Leaders Launch Campaign to Educate People about Fraud Problem*, Fox13 News, *available at* http://fox13now.com/2017/04/05/feds-utah-leaders-launch-campaign-to-educate-people-about-fraud-problem.  Utah is the only state with a dedicated regional Securities Exchange Commission office that services no other location.  It is also the first state in the country to create a white-collar offender registry to include photos, names, and aliases of fraudsters.

When Congress enacted Section 3553(a), it noted the importance of general deterrence and specifically sought to curb judicial leniency in the context of economic crimes: "Major white collar criminals often are sentenced to small fines and little or no imprisonment.  Unfortunately, this creates the impression that certain offenses are punishable only by a small fine that can be written off as a cost of doing business." 62 S. Rep. No. 98-225, at 76 (1983), reprinted in 1984 U.S.S.C.A.N. 3182, 3259.  This same goal is also reemphasized by the sentencing guidelines:

Page 8 of 11

"One of the central reasons for creating the sentencing guidelines was to ensure stiffer penalties for white-collar crimes and to eliminate disparities between white-collar sentences and sentences for other crimes."  *United States v. Davis*, 537 F.3d 611, 617 (6th Cir. 2008).  The Seventh Circuit likewise emphasized the need to resist judicial leniency toward white collar criminals:

> It is natural for judges, drawn as they (as we) are from the middle or upper-middle class, to sympathize with criminals drawn from the same class.  But in this instance we must fight our nature.  Criminals who have the education and training that enables people to make a decent living without resorting to crime are more rather than less culpable than their desperately poor and deprived brethren in crime. *United States v. Stefonek*, 179 F.3d 1030, 1038 (7th Cir.1999).

The Eleventh Circuit identified economic crime as a prime candidate for deterrence because it is "'more rational, cool, and calculated than sudden crimes of passion or opportunity.'" *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) (quoting Stephanos Bibas, White-Collar Plea Bargaining and Sentencing After Booker, 47 Wm. & Mary L. Rev. 721, 724 (2005)). Specifically, the cost-benefit analysis engaged in by white collar defendants is susceptible to influence through "serious punishment." *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006).

The Zions Bank victim impact statement submitted to the Court likewise outlines the need for general deterrence in this case: "Many employees are aware of Frischknecht's scheme and the outcome of his sentence will send a message to our employees on how seriously Zions Bank manages internal theft."  What message will be sent to the community and would-be fraudsters if Mr. Frischknecht receives a light sentence?  The imposition of lengthy sentences for white collar criminals, like Mr. Frischknecht, is a proven means of deterrence and is highly warranted here in Utah, based on the local pervasiveness of fraud.

*4. The need to provide restitution to any victims of the offense*:

Although Mr. Frischknecht arranged full restitution to his victim, Zions Bank has made clear that Mr. Frischknecht "should serve the full sentence called for in the Federal Sentencing Guidelines."

*5. Sentencing Disparity*:

In its position on sentencing factors, the defense cites to four other cases handled in this district by a variety of different judges, drawing particular attention to the Joseph Sexton case. There are a number of significant differences between Mr. Frischknecht and Mr. Sexton.  First, the victims in the Sexton case, a group of pathologists, made clear to the sentencing judge that "there are a variety of opinions within the group as to whether or not Mr. Sexton should serve jail time.  After much discussion and voting, the ultimate majority opinion of the group was to defer to you on the matter of custodial sentence."  In this case, Zions Bank has made it clear that a significant custodial sentence called for by the guidelines is appropriate.  Second, the victims in Sexton reported a theft of only $549,000, which dropped Mr. Sexton's guideline calculation by 2 points in contrast to the instance case.  Moreover, Mr. Frischknecht was in a position of trust, which specifically allowed him to embezzle the funds, which increases his guideline range by two points.  Third, Mr. Sexton confessed his embezzlement to his employer after he was confronted. Mr. Frischknecht consistently lied to his employer regarding the embezzlement and only later took responsibility when it was clear that an investigation was underway and criminal charges were pending.  Finally, Mr. Frischknecht has caused the significant expenditure of limited government resources including investigation, litigation, and grand jury time.  Indeed, his case has been pending before this Court for almost 1 year.  Mr. Sexton confessed and came to the U.S. Attorney's Office seeking immediate resolution of his case and pleaded guilty at his initial appearance.

There are likewise significant differences to the other cases cited by defense counsel.  For example, Nghia Thi Sabol was to be deported to Vietnam after her sentence.  Benjamin Rees, after pleading to tax charges in federal court, has since been charged in state court and is facing penalties from that sovereign.  The defendant's recommendation that the Court use other cases out of this district as benchmarks is self-serving and inappropriate.  If this Court truly desires to achieve consistency and avoid sentencing disparity, the prudent course is <u>not</u> to rely on isolated local cases, but to rely on the accumulated wisdom and expertise of the Sentencing Commission which seeks uniformity and fairness in sentences across the entire country.

### IV.    CONCLUSION

In an effort to consolidate the cases and promote efficiency, the parties agree that the Court should impose an obstruction enhancement for Mr. Frischknecht's criminal conduct in attempting to defraud the Court.  The Court should consider all of Mr. Frischknecht's criminal behavior while on release pending the resolution of this case and sentence Mr. Frischknecht accordingly.  The United States will then dismiss the obstruction and identity theft case assigned to Judge Benson.  Accordingly, the United States respectfully requests that the Court impose a high-end guideline sentence followed by a three-year term of supervised release, and order restitution (already paid) in the amount of $565,591.41.

RESPECTFULLY SUBMITTED this 3rd day of August, 2018.

JOHN W. HUBER
United States Attorney

*/s/ Jacob J. Strain*_____
JACOB J. STRAIN
Assistant United States Attorney